**WDC VENTURE, a general partnership, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, John Does 1–100, Jane Does 1–100, Doe Entities 1–100, Defendants.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Third–Party Plaintiff,**

v.

**INDUSTRIAL INDEMNITY INSURANCE COMPANY, Third–Party Defendant.**

**WDC VENTURE, a general partnership, Plaintiff,**

v.

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY, as successor in interest to Industrial Indemnity Insurance Company, Third–Party Defendant.**

**Civil No. 94–00381 DAE.**

United States District Court, D. Hawaii.

Aug. 14, 1996.

William C. McCorriston, Richard B. Miller, Brad S. Petrus, McCorriston Miho Miller & Mukai, Honolulu, HI, for WDC Venture, a general partnership.

Diane W. Wong, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, for The Hartford Insurance Group, a corporation.

Stephen P. Randall, Long & Levit, San Francisco, CA, for Industrial Indemnity Insurance Company and Westchester Surplus Lines Insurance Company, as successor in interest to Industrial Indemnity Insurance Company.

## ORDER GRANTING THIRD–PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard Third–Party Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Partial Summary Judgment on August 12, 1996. R. John Siebert, Esq., and K. Rae McCorkle, Esq., appeared on behalf of Plaintiff WDC Venture ("WDC"); Howard M. Garfield, Esq., appeared on behalf of Third–Party Defendant Westchester Surplus Lines Insurance Company ("Westchester") as successor in interest to Industrial Indemnity Insurance Company. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Westchester's Motion for Summary Judgment and DENIES AS MOOT WDC's Cross-motion for Partial Summary Judgment.

1. On September 23, 1988, merchants and food providers doing business in the International Market Place ("IMP") sued WDC in *Hawaii Food Services Corp., et al. v. WDC Venture, et. al.*, Civ. No. 88–00706 (D.Haw.) (the "Food Court" action) for recovery of monetary damages based upon theories of violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, violation of Hawaii Franchising Law, promissory estoppel, unjust enrichment, and breach of contract.

2. On October 11, 1988, a second group of IMP merchants filed an action against WDC in the First Circuit, State of Hawaii, *Kang et. al. v. WDC Venture, et. al.*, Civ. No. 88–3154–10 (state court) (the "Kang action"). The plaintiffs in the Kang action filed a first amended complaint alleging negligence, intentional and/or negligent breach

## BACKGROUND

The facts of this case were set forth in this court's August 2, 1996 Order Denying Third–Party Defendant's Motion to Dismiss and for Rule 11 Sanctions ("August 2, 1996 Order") and need not be repeated here in their entirety.

In brief, the instant litigation is a declaratory judgment action for indemnification of amounts paid or losses incurred by WDC in two underlying suits—the Food Court[1] and Kang[2] actions. WDC settled the Food Court and Kang actions for $2,300,000 and $190,000 respectively. Subsequently after WDC filed the instant declaratory judgment action, Hartford settled with WDC by paying $900,000 on its $1 million comprehensive general liability policy (which covered the period from November 12, 1986 to November 12, 1987) ("1987 primary coverage policy"), without admitting liability or fault. There was also an excess policy in place for that same time period by Westchester's predecessor-in-interest ("Policy" or the "Westchester Policy").[3]

Hartford in turn filed a third-party complaint against Westchester for indemnification of any amounts adjudged to be due and owing by Hartford to WDC. Thereafter, WDC filed a rule 14(a) Complaint against Westchester which pleads causes of action for: (1) declaratory judgment that Westchester has a duty under the Excess Policy to indemnify WDC in an amount equivalent to amounts paid by Plaintiff to defend and set-

of fiduciary duty, fraud, negligent and/or intentional misrepresentation, promissory estoppel, breach of licenses and operating agreements, frustration of purpose of the licenses and operating agreements, breach of the duty of good faith and fair dealing, breach of covenant of quiet enjoyment, and constructive and/or retaliatory eviction.

3. The excess insurance policy referenced as "the Policy" or the "Westchester Policy" was technically issued by Westchester's predecessor-in-interest, Industrial Indemnity Insurance Company. But because Westchester is being sued in place of Industrial Indemnity, the court will refer to the excess insurance policy as the "Westchester Policy" to simplify matters and minimize confusion.

tle the Food Court and Kang Actions[4] (Count I); (2) breach of contract (Count II); (3) tortious breach of contract (Count III); (4) breach of duty of good faith and fair dealing (Count IV); and (5) punitive damages (Count V).

Pending before the court is Westchester's motion for summary judgment on the Rule 14(a) complaint, and WDC's cross-motion for partial summary judgment on the issue of whether the personal injury coverage provision of the 1987 primary coverage policy, which was adopted by reference in the Westchester Policy, provides coverage for any portion of the contract placed in issue in the underlying suits during the time period covered by the Westchester Policy.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991). The nonmoving

party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630; *Blue Ocean Preservation Soc'y v. Watkins*, 754 F.Supp. 1450, 1455 (D.Haw.1991); Fed.R.Civ.P. 56(e). If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695 (1990); *T.W. Elec. Serv., Inc.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir.1994); *Blue Ocean*, 754 F.Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Inferences must be drawn in favor of the nonmoving party. *T.W. Elec. Serv., Inc.*, 809 F.2d at 631. However, when the opposing party offers no direct evidence of a material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *Id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir.1994) (citing *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. de-*

---

4. WDC made clear at the June 17, 1996 hearing that it was not trying to collect the full $2.5 million settlement amount from Westchester; the exact amount sought from Westchester, however, is irrelevant for adjudication of the current motions.

*nied,* 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 650 (1988)).

## DISCUSSION

### I. Westchester's Motion for Summary Judgment

Westchester moves for summary judgment on both defense and indemnification claims in this case. As the duty to defend and the duty to indemnify are separate and distinct legal duties grounded in the contractual language of the Policy, the court will address each separately below.

#### A. *Defense Claims*

Westchester contends that it is entitled to summary judgment on WDC's request for contribution to the defense costs. Westchester argues that the Policy does not provide for a duty to defend the underlying actions.

WDC disagrees with Westchester's reading of the Policy.

█ It is undisputed that an insurer's duties to its insured are contractual in nature and thus the court must look to the language of the policy to determine the scope of such duties. *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.,* 76 Hawai'i 277, 875 P.2d 894 (1994).

█ Here, the language of the Westchester Policy states that it follows the underlying Hartford policy, except with respect to "any obligation to investigate or defend any claim or suit." *See* the Policy as attached to Nay Decl., Exh. A, at WST 00408 and Siebert Decl., Exh. 3, at WDC 00062. This provision clearly excludes Westchester from any liability for the costs of the investigation or defense. Under this provision, the court finds that Westchester is not liable to pay defense or investigation costs.

█ Moreover, the court finds no other provisions in the Policy that render Westchester liable for defense or investigation

costs. WDC's reliance on the "Expenses" section in support of its claim is misplaced because that clause provides for payment of investigation or defense costs only where the insured had previously obtained the insurer's consent.[5] *Id.* WDC does not contend that Westchester authorized or consented to the investigation, defense, or settlement of the underlying claims. In fact, the record indicates that WDC only gave Westchester notice of the suit several months after the case settled. Siebert Decl, at ¶ 12; Cross–Motion, Exh. 27. As there is no evidence of prior consent for the investigation and defense of the Food Court and Kang suits, the Expenses provision does not apply here. Under a plain reading of the language of the Policy, Westchester has no duty to defend WDC in this case. The court accordingly GRANTS Westchester's Motion for Summary Judgment as to the duty to defend claims.

#### B. *Indemnification Claims*

Westchester also contends that, as a matter of law, it has no duty to indemnify WDC for the Food Court and Kang actions. Westchester argues that the Policy does not afford coverage for (a) claims in which the injury arose after the Policy expired, (b) damages based on contractual obligations, (c) claims based on intentional misconduct, (d) claims seeking equitable relief, and (e) settlements fashioned without Westchester's consent and without making a definite claim for loss. Westchester also maintains that Hartford's policy must be exhausted before its liability is triggered under the contract.

Before turning to Westchester's specific arguments in the instant motion, the court preliminarily disposes of Westchester's "intentional acts" and "exhaustion requirement" arguments based on the rulings in its August 2, 1996 Order. In that Order, the court held

---

5. The Expenses clause WDC relies upon here states:

> Loss and legal expenses incurred by the insured with the consent of the company in the investigation or defense of claims, including court costs and interest, shall be borne by both the company and the insured in the proportion

> that each party's share of loss bears to the total amount of such loss ... Expenses thus paid by the company shall be paid in addition to the limit of the liability of the company.

> *See* the Policy as attached to Nay Decl., Exh. A, at WST 00408 and Siebert Decl., Exh. 3, at WDC 00062.

that (a) claims for *intentional torts* [6] are not categorically excluded under the Policy, and (b) WDC's $2.3 million payment to the Food Court plaintiffs was sufficient to trigger potential coverage here. *See* August 2, 1996 Order, at 7–17. The court applies these holdings under the law of the case doctrine. Westchester has not provided this court with any additional facts or law that would mandate reconsideration of its previous ruling. The court will accordingly streamline its discussion of the issues raised in the instant motions to conform with its findings and conclusions in the August 2, 1996 Order.

### 1. Triggering event

In its first argument, Westchester contends that no occurrence transpired sufficient to trigger coverage under the Policy. According to Westchester, the court must look at the date when actual damage was sustained to determine if the Policy covers the events in question; Westchester urges the court to adopt the "injury-in-fact" trigger for coverage. *See Sentinel,* 76 Hawai'i at 287–88, 875 P.2d 894. Westchester contends that there is no coverage in this case because no actual damage was sustained by the Food Court action plaintiffs until they were notified of the contemplated development of the property in February 18, 1988, nearly three months after the expiration of the Westchester policy.

WDC argues that the triggering event for Policy coverage is the commission of the fraud, not the date the fraud was detected by or announced to the merchants. WDC argues that the fraud in the Food Court action was committed during the Policy period when Westchester made the allegedly material misrepresentation to the merchants about the likelihood of a five-year lease term (including renewal).

■ In *Sentinel,* the Hawaii Supreme Court distinguished the triggering mechanism for "occurrence" policies from that for "claims made" or "discovery" policies. 76

Hawai'i at 287–88, 875 P.2d 894. An "occurrence policy" provides coverage if the event insured against (the "occurrence") takes place during the policy period, irrespective of when a claim is presented. *Id.* Under an occurrence policy, the event that triggers potential coverage is the sustaining of actual damage by the complaining party and not the date of the act or omission that caused the damage. *Sentinel,* 76 Hawai'i at 288, 875 P.2d 894; *Trizec Properties, Inc. v. Biltmore Constr. Co.,* 767 F.2d 810, 812 (11th Cir. 1985); 11 Couch on Insurance 2d, § 44:8 at 194 (Rev. ed. 1982). Under a "claims made" or "discovery" policy, coverage is triggered by the presentation of a claim during the policy term regardless of when the event insured against took place. *Id.; see also, Trizec,* 767 F.2d at 812.

In *Sentinel,* the insurance policy provided indemnification for "occurrences" that, inter alia, resulted in "physical injury to or destruction of tangible property which occurs during the policy period." 76 Hawai'i at 297, 875 P.2d 894. Based on this policy language, the *Sentinel* court adopted the injury-in-fact trigger whereby coverage is triggered by the actual occurrence during the policy period of an injury-in-fact. *Id.* at 298, 875 P.2d 894.

■ The *Sentinel* holding is not strictly applicable to the instant case because, unlike in the instant case, *Sentinel* arose from a bodily injury coverage dispute that depended on an "occurrence" which resulted in an injury-in-fact during the policy period. The personal injury provision of the Policy here has neither an *injury-in-fact trigger* nor a claims-made trigger; instead the Policy is triggered by the commission of a specific type of offense during the relevant Policy period. The Westchester Policy, which incorporates by reference the following personal injury provision of the Hartford policy, provides coverage for "injury arising out of one or more of the following offenses *committed during the policy period:* (1) false arrest, detention, imprisonment, or malicious prosecution; (2)

---

**6.** The court found that the Policy did not categorically exclude coverage for intentional acts. The court noted that the Policy provided coverage under the personal injury clause for such torts as false arrest, malicious prosecution, wrongful entry, libel and slander. August 2, 1996 Order, at 16 n. 7. It is important, however, to clarify that the August 2, 1996 Order did not address the viability of claims arising from an intentional breach of contract.

wrongful entry or eviction or other invasion of the right of private occupancy." *See* Randall Decl., Exh. C, at SBF–3. From this language, it is clear that one of the enumerated offenses must have been "committed during the policy period" for coverage under the personal injury clause. This provision does not require either that the claim be made or that the injury occur during the policy period[7]. *See Town of Stoddard v. Northern Security Ins. Co.,* 718 F.Supp. 1062, 1065 n. 3 (D.N.H.1989).

Instead, to establish coverage under the Policy language, WDC must show that (a) one of the enumerated offenses was committed during the Policy period, and (b) there was a resulting injury. WDC fails to meet the first prong of its burden.

■ The parties agree here that there was no false arrest, detention, imprisonment, malicious prosecution, or wrongful entry here. The remaining question is whether coverage was triggered under the "invasion of the right of private occupancy" clause. The court finds that it was not.

Neither of the underlying complaints allege an invasion of the right of private occupancy during the Policy period. The Food Court plaintiffs do not make any claims whatsoever that could be construed as an alleged invasion of their right to private occupancy. And while the plaintiffs allege breach of quiet enjoyment and constructive eviction in the Kang complaint, these allegations arise from WDC's actions in 1988[8] after the Westchester Policy had expired.

Moreover, the court finds that the alleged fraud that took place during the contract negotiations in 1987 cannot form the basis of a viable personal injury claim under the Policy because fraud is not one of the enumerated offenses. The Policy only covers injury arising from one of the enumerated offenses that was committed during the Policy term.

Furthermore, the court notes that the fraud and misrepresentation occurred prior to the existence of the contract which created that particular right; it would not be possible to violate the right of private occupancy before it vested as a right via the consummation of the contract.

Under these facts, the court finds that WDC cannot recover under the "invasion of the right of private occupancy" section of the personal injury clause.

**2. Coverage for Claims Based on the Contract**

In an alternative argument in support of summary judgment on the Rule 14(a) Complaint, Westchester contends that it is entitled to summary judgment in this case because it is not liable under the Policy for contract-based claims. Westchester relies heavily on *Stanford Ranch, Inc. v. Maryland Cas. Co.,* 883 F.Supp. 493 (E.D.Cal.1995) (*"Stanford I "*), and the Ninth Circuit opinion affirming that decision *Stanford Ranch v. Maryland Cas. Co.,* 89 F.3d 618 (9th Cir. 1996) (*"Stanford II "*) for the proposition that general liability policies afford coverage only for torts, not for contract-based actions. Westchester argues that the Food Court and Kang actions against WDC were derivative of the contractual relationship between WDC and the tenants and are therefore outside the scope of Policy coverage.

WDC argues that Westchester's position is unsupported by Hawaii law. WDC argues that there is no case law directly on point regarding insurance recovery for contract claims, but that the court can infer based on the recovery in *Dold v. Outrigger Hotel,* 54 Haw. 18, 22, 501 P.2d 368 (1972) that the Hawaii Supreme Court is amenable to allowing recovery in mixed contract/tort cases.

As an initial matter, the court notes that there are no cases in Hawaii that are directly on point regarding the issue of insurance

---

7. The distinction here is between the date of actual injury and the date of the event which caused the injury. *Sentinel 's* injury-in-fact trigger focuses on the former; the Westchester Policy provides coverage based on the latter.

8. Specifically, the Kang complaint states that after the merchant-plaintiffs publicly made known their opposition to the convention center in 1988, "[i]n retaliation ... [WDC] "increased license fees, maintenance and operating expense charges, and imposed other unreasonable conditions upon the Defendants." *See* Kang Complaint, attached to Amended Complaint, Exh. E, ¶¶ 56–60.

recovery for contract-based claims. Under California law, however, a claim for personal injury arising out of an invasion of the right of private occupancy is covered only if it sounds in tort. *Stanford II,* 89 F.3d at 625–26.

In *Stanford I,* the plaintiff alleged contract causes of action (specific performance, breach of contract, breach of covenant of good faith and fair dealing) as well as tort causes of action (intentional and negligent misrepresentation, concealment or nondisclosure); each of the actions was related to the sale of parcels of land in the Stanford Ranch subdivision. The *Stanford I* court granted summary judgment in favor of the defendants because it determined that there was no coverage for damages based on contractual claims or on tort claims arising from contractual relationships. 883 F.Supp. at 496.

The district court held, and the Ninth Circuit affirmed, that if a claim is dependent upon the existence of an underlying contract, the claim sounds in contract, as opposed to tort and is not covered by the insurance policies.[9] *Stanford II,* 89 F.3d at 625–26. In *Stanford II,* the Ninth Circuit held that the underlying lawsuits (which alleged claims based on breach of contract, negligent and intentional misrepresentation, and nondisclosure) depended on the existence of a contract and thus were not covered under the insurance policies. *Id.*

In a case based on an insurance policy with a virtually identical personal injury clause, a Pennsylvania court found that the policy only covered tort-based claims, not actions based on a breach of contract. *Toombs NJ Inc. v. Aetna Casualty & Surety Co.,* 404 Pa.Super.

471, 591 A.2d 304, 306 (1991). The *Toombs* court found it contrary to precedent and to public policy to allow indemnification for a breach of contract claim. The court stated:

> To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit. The expansion of the scope of the insurer's liability would be enormous without corresponding compensation.

*Toombs,* 591 A.2d at 306.

■ In the absence of any Hawaii case law on this issue, the court finds the *Stanford* cases and *Toombs* instructive. Similar to the provisions in *Stanford I* and in *Toombs,* the personal injury liability endorsement in the Policy at hand (as incorporated from the Hartford Policy) states that "[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury ... to which this insurance applies." *See* Randall Decl., Exh. A, at SBF–2, and Cross–Motion, Exh. 1, at WDC 00019. As noted earlier, the personal injury clause provides for coverage of injury arising out of wrongful entry or eviction or other invasion of the right of private occupancy. *Id.* For the reasons stated below, the only logical interpretation of this Policy language is that it excludes coverage for actions arising out of contractual relationships.

First, the holding in *Stanford I* is persuasive because of the factual similarity. Similar to the underlying lawsuit in *Stanford I,* the Food Court and the Kang actions here are premised on contractual claims and tort

---

**9.** Also noteworthy is that *Stanford II* declined to follow the holding in *American States Ins. Co. v. Canyon Creek,* 786 F.Supp. 821 (N.D.Cal.1991) which allowed personal injury coverage for misrepresentation claims framed as fraud or negligent misrepresentations claims sounding in tort because it went against the great weight of authority in California. The Ninth Circuit stated: "We decline to follow *Canyon Creek* because the case goes against, and in fact ignores, the strong line of California authority that a claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort." *Stanford II,* 89 F.3d at 625–26.

Although this court found *Canyon Creek* to be persuasive authority in its August 2, 1996 Order,

the court is bound to follow the very recent Ninth Circuit holding in *Stanford II* which limits *Canyon Creek* to its facts. The court cited to *Canyon Creek* and *Town of Goshen v. Grange Mut. Ins. Co.,* 120 N.H. 915, 424 A.2d 822 (1980) to illustrate that under some circumstances, fraud and negligent misrepresentation may be covered under the "invasion of the right of private occupancy" clause in an insurance contract. The court's holding in that Order is not incompatible with the holding here, because *Canyon Creek* and *Town of Goshen* only speak to the viability of intentional tort claims, they do not address intentional breaches of contract as alleged here.

claims based on the contractual relationship. It is clear from the record that all of the claims in the underlying actions have a contractual basis; claims are obviously contractual basis even the tort actions are premised on the contractual relationship. Since WDC seeks recovery here for tort and contract claims *that arise from the contractual relationship*, the court finds that the underlying lawsuits are outside the scope of policy coverage in this case.

Second, the court finds that policy coverage of such contractual-based allegations would be contrary to public policy. "There is simply no reason to expect that such a liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, the coverage of the policy has been expanded to cover other non-bodily injuries *that sound in tort.*" *Toombs*, 591 A.2d at 306 (emphasis added). To allow indemnification for contract-based claims in this case would not be a reasonable manifestation of the Policy language; it simply would not make sense for Westchester to indemnify WDC for an intentional breach of contract claim, as doing so would enable WDC to disregard the contract at will. *Id.* The court is mindful that it is to construe the contract liberally to fit the intended meaning of the parties. Even in light of this obligation, however, the court rejects WDC's contract-based claims, because to allow coverage for willful and wanton breach of contract claims would render the contract meaningless. A breach of contract is an uninsurable activity, as to hold otherwise would invite such misbehavior.

Lastly, the court finds WDC's reliance on *Dold* misplaced. The fact that the Hawaii Supreme Court allowed recovery for tortious breach of contract in that case has no bearing on whether there is insurance coverage for contract-based actions here. The issue in *Dold* was whether the plaintiff could recover tort damages for a willful and wanton breach of contract; here the issue is one step re-

moved because the court must decide whether such damages are recoverable under the Westchester Policy. The terms of the Policy are controlling here and there is no language in the Policy that purports to cover tortious breaches of contract. And WDC provides no cases that provide insurance coverage for such claims. Common sense dictates that if breach of contract claims are outside the scope of the Policy coverage so are any extraordinary remedies recoverable for flagrant breaches of contract. Finally, after carefully analyzing Hawaii Supreme Court precedent, this court concludes that the Hawaii Supreme Court would follow the reasoning set forth in *Stanford II*. The court further concludes that the Policy does not cover Plaintiff's claims in the underlying actions and thus Westchester does not owe WDC a duty to indemnify as to the underlying settlements. Accordingly, the court GRANTS Westchester's Motion for Summary Judgment.[10]

## II. WDC's Cross–Motion for Partial Summary Judgment

WDC seeks partial summary judgment to establish that the personal injury coverage provision of the 1987 primary coverage policy as incorporated in the Westchester Policy provides coverage for at least some of the conduct placed in issue by the Food Court action during the Policy Period. As the court has already determined that the personal injury clause does not provide coverage for the underlying claims, the court DENIES AS MOOT WDC's Cross–Motion for Partial Summary Judgment.

### CONCLUSION

For the reasons stated above, the court GRANTS Westchester's Motion for Summary Judgment and DENIES AS MOOT WDC's Cross–Motion.

IT IS SO ORDERED.

---

**10.** Westchester's alternative arguments for summary judgment are based on their claims that (a) the Policy does not cover claims seeking equitable relief, and (b) WDC failed to notify Westches-

ter within the time period specified by the Policy. It is unnecessary to resolve these issues, as the court has granted summary judgment on other bases.