FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

GROUP BUILDERS, INC. and TRADEWIND INSURANCE COMPANY, LTD.,
Plaintiffs/Counterclaim Defendants-
Appellants/Cross-Appellees,
v.
ADMIRAL INSURANCE COMPANY,
Defendant/Counterclaimant/Cross-Claimant-
Appellee/Cross-Appellant,
and
NATIONAL INTERSTATE INSURANCE COMPANY;
SERVCO INSURANCE SERVICES CORP., formerly
known as and/or doing business as American
Insurance Agency, Inc. and American Insurance Agency;
NATIONAL INTERSTATE INSURANCE COMPANY OF HAWAII, INC.,
Defendants-Appellees/Cross-Appellants,
and
ZURICH AMERICAN INSURANCE COMPANY,
Defendant/Cross-Claim Defendant-Appellee

NO. 29402

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-2204)

MAY 19, 2010

FOLEY, PRESIDING J., FUJISE AND REIFURTH, JJ.


OPINION OF THE COURT BY FOLEY, J.

In a case arising out of an insurance dispute, Plaintiffs/Counterclaim Defendants-Appellants/Cross-Appellees Group Builders, Inc. (Group) and Tradewind Insurance Company, Ltd. (Tradewind) (collectively, Plaintiffs) appeal from the "Order Granting Plaintiffs' Motion for (1) Rule 54(b) Certification Re Various Orders or, (2) With Respect to the Order Granting Defendant Admiral Insurance Company's Motion for Partial Summary Judgment Re: No Duty to Indemnify, in the Alternative, for Leave to File an Interlocutory Appeal, and (3) for a Stay of These Proceedings Pending Appeal, Filed on September 3, 2008"

filed on October 3, 2008 in the Circuit Court of the First Circuit[1] (circuit court).

The instant appeal originally consisted of (1) Plaintiffs' appeal from six circuit court orders; (2) a cross-appeal of Defendants-Appellees/Cross-Appellants National Interstate Insurance Company (National Interstate), National Interstate Insurance Company of Hawaii (National Interstate of Hawaii), and Servco Insurance Services Corp. (Servco) from three circuit court orders; and (3) a cross-appeal of Defendant/ Counterclaimant/Cross-Claimant-Appellee/Cross-Appellant Admiral Insurance Company (Admiral) from a separate order.

In this court's February 12, 2009 "Order Partially Dismissing Appeal and Completely Dismissing All Cross-Appeals," we dismissed for lack of jurisdiction all of the cross-appeals and Plaintiffs' appeal from the various orders except for Plaintiffs' appeal of the circuit court's September 23, 2008 "Order Granting Defendant Admiral Insurance Company's Motion for Partial Summary Judgment Re: No Duty to Indemnify, Filed on June 25, 2008" (Order Granting Admiral's MPSJ). We concluded that this order had been properly certified for interlocutory appeal pursuant to HRS § 641-1(b) (1993 & Supp. 2009).

On appeal, Plaintiffs' sole point of error is that the circuit court erred in holding there was no genuine issue of material fact and in dismissing the claims for Admiral's breach of its duty to indemnify Group, as a matter of law.

We disagree with Plaintiffs' point of error and affirm the circuit court's Order Granting Admiral's MPSJ.

I.

Hilton Hotels Corporation (HHC) is the parent of Hilton Hawaiian Village, LLC (HHV). By contract dated August 2, 1999, HHC employed Hawaiian Dredging as the general contractor for construction of the Kalia Tower (Tower) that was to be built as

---

[1]  The Honorable Glenn J. Kim presided.

part of the Hilton Hawaiian Village in Waikiki, Honolulu, Hawai'i. Hawaiian Dredging subcontracted Group to install an exterior insulation finishing system and sealant, spray-applied fireproofing, building insulation, and metal wall framing on the Tower.

From October 1, 2000 to December 1, 2000, Admiral provided Group with commercial general liability (CGL) insurance coverage.[2]

After construction on the Tower had been completed, the Tower guest rooms were opened to the public in May 2001. In mid-2002, extensive mold growth was discovered in the guest rooms. On July 24, 2002, HHC and HHV closed the guest rooms on floors 5 through 25 of the Tower for remediation. An investigation revealed numerous material defects in the design and construction of the Tower. Some of these defects substantially contributed to or caused the mold growth.

HHC and HHV filed suit in 2003 against numerous defendants, including Group, for the construction defects and closure of the Tower (Tower lawsuit). In their complaint, HHC and HHV alleged five causes of action against Group: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) negligence, (4) breach of express and implied warranties, and (5) negligent misrepresentation. After receiving notice of the lawsuit, Admiral refused to defend, indemnify, or otherwise provide insurance coverage to Group for the claims asserted in the Tower lawsuit.

A settlement as to HHC and HHV's claims was reached involving Tradewind, Group, Defendant/Cross-Claim Defendant-Appellee Zurich American Insurance Co. (Zurich), and Fireman's Fund Insurance Company of Hawaii, Inc. (Fireman's Fund). In

---

[2] From October 1, 1999 to October 1, 2000, Tradewind provided Group with CGL and commercial umbrella insurance. After December 1, 2000, Group maintained several insurance policies with Defendant Zurich American Insurance Co. and Fireman's Fund Insurance Company of Hawaii, Inc.

connection with the settlement, Group assigned its claims against Admiral, as well as the right to sue in Group's name, to Tradewind.

On December 13, 2005, Plaintiffs filed a complaint. On May 30, 2006, Plaintiffs filed a First Amended Complaint against, inter alia, Admiral[3] for its refusal to defend, indemnify, or otherwise provide insurance coverage to Group for the claims asserted in the Tower lawsuit.

In the course of the proceedings, Admiral filed a "Motion for Partial Summary Judgment Re: No Duty to Indemnify" on June 25, 2008 (Admiral's MPSJ). Plaintiffs opposed the motion. The circuit court granted Admiral's MPSJ.

On September 3, 2008, Plaintiffs filed a "Motion for (1) Rule 54(b) Certification Re: Various Orders or, (2) with Respect to the Order Granting Defendant Admiral Insurance Company's Motion for Partial Summary Judgment Re: No Duty to Indemnify, in the Alternative, for Leave to File an Interlocutory Appeal, and (3) for a Stay of These Proceedings Pending Appeal." The circuit court granted this motion, directing entry of final judgment as to various orders and certifying the Order Granting Admiral's MPSJ for interlocutory appeal under Hawaii Revised Statutes (HRS) § 641-1(b).[4]

---

[3] Plaintiffs also named Servco, formerly known as and/or doing business as American Insurance Agency, Inc. and American Insurance Agency; National Interstate; National Interstate of Hawaii; and Zurich as defendants.

[4] HRS § 641-1(b) authorizes interlocutory appeals to this court under the following circumstances:

> (b) Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court thinks the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

On February 12, 2008, this court dismissed all appeals for lack of jurisdiction, except for the interlocutory appeal of the Order Granting Admiral's MPSJ.

## II.

> On appeal, the grant or denial of summary judgment is reviewed de novo. *See State ex rel. Anzai v. City and County of Honolulu*, 99 Hawai'i 508, 514, 57 P.3d 433, 439 (2002); *Bitney v. Honolulu Police Dep't*, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).
>
> > [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.
>
> *Kahale v. City and County of Honolulu*, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

<u>Nuuanu Valley Ass'n v. City & County of Honolulu</u>, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

## III.

Plaintiffs contend the circuit court erred in granting Admiral's MPSJ. The circuit court held:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED, without prejudice to any other issues in support of the Motion, that because there is no genuine issue of material fact that any property damage as a result of an occurrence took place at Kalia Tower Project during the Admiral Policy period, which is required for coverage under Admiral's Policy, Admiral's [MPSJ] is GRANTED.

Plaintiffs argue that the circuit court "erroneously concluded that there was no evidence of property damage caused by an occurrence during [Admiral's] Policy Period and dismissed the indemnity claim."

As a preliminary matter, we note that Admiral's CGL policy obligates Admiral to pay "those sums that the insured [Group] becomes legally obligated to pay as damages because of

'bodily injury' or 'property damage' to which this insurance applies." The policy further indicates:

> b.      This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1)      The "bodily injury" or "property damage" is caused by an occurrence" that takes place in the "coverage territory"; and
> >
> > (2)      The "bodily injury" or "property damage" occurs during the policy period.
>
> The policy defines "property damage" as:
>
> a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The mold damage and resulting loss of use of the Tower qualifies as "property damage" under the policy. The issue is whether this "property damage" was caused by an "occurrence" during the policy period. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In their complaint, HHC and HHV identified the primary causes/contributing factors of the mold damage and closure of the Tower:

> 35.      On July 24, 2002, following a preliminary evaluation of conditions in the building, [HHC and HHV] closed the guest rooms on floors 5 through 25 of the Kalia Tower to the public. Since the discovery of the mold, [HHC and HHV] have undertaken extensive efforts to ascertain and remediate the causes of the excessive mold growth and the resulting damage to the building and its contents.
>
> 36.      In the course of its investigation and evaluation of the Kalia Tower, [HHC and HHV] discovered numerous material defects in the design and construction of the Kalia Tower building. Certain of these design and construction defects were substantial factors causing and/or contributing to the mold growth in the Kalia Tower and to the closure of the guest rooms. Others, while not contributing to the mold, materially affect, among other things, the value, operation, and integrity of the Kalia Tower and must be, and are being, corrected.

The issue before us is whether alleged faulty construction work, giving rise to contractual claims, constitutes an "occurrence" under a CGL policy.

In WDC Venture v. Hartford Accident & Indemnity Co., 938 F. Supp. 671, 677 (D. Hawaiʻi 1996), the United States District Court for the District of Hawaiʻi considered an insurer's argument "that it is entitled to summary judgment . . . because it is not liable under the [CGL] Policy for contract-based claims." The district court noted that "[a]s an initial matter, . . . there are no cases in Hawaii that are directly on point regarding the issue of insurance recovery for contract-based claims." Id. at 677-78. The district court accordingly looked to California and Pennsylvania precedent, which collectively held that contractual claims were not covered under similar insurance policies. Id. at 677-79. Based on this authority, the district court concluded that "[s]ince WDC [Venture] seeks recovery here for tort and contract claims *that arise from the contractual relationship*, the court finds that the underlying lawsuits are outside the scope of policy coverage in this case." Id. at 679 (emphasis in original).

The district court also reasoned that permitting contractual claims under a CGL would violate public policy:

> To allow indemnification for contract-based claims in this case would not be a reasonable manifestation of the Policy language; it simply would not make sense for Westchester to indemnify WDC [Venture] for an intentional breach of contract claim, as doing so would enable WDC to disregard the contract at will. . . . [T]he court rejects WDC [Venture's] contract-based claims, because to allow coverage for willful and wanton breach of contract claims would render the contract meaningless. A breach of contract is an uninsurable activity, as to hold otherwise would invite such misbehavior.

Id.

In Burlington Insurance Co. v. Oceanic Design & Construction Inc., 383 F.3d 940, 943 (9th Cir. 2004), dissatisfied homeowners filed a counterclaim against Oceanic, a builder insured under a GLC policy, based on "allegations . . .

that Oceanic improperly designed and/or constructed the foundation of the residence causing earth movement and resulting in physical and structural damage to both the residence and the retaining walls on the property." Id. Oceanic tendered defense of the counterclaim to its insurer, Burlington. Id. Burlington agreed to defend, but then filed suit, seeking a declaration that the CGL policy did not provide coverage against the homeowners' counterclaim. Id. Burlington moved for summary judgment, arguing that none of the homeowners' allegations in the counterclaim were covered under Oceanic's CGL policy. Id. at 943-44. The district court agreed and granted Burlington's motion. Id. at 944.

On appeal, Oceanic argued that "allegations of negligence, even alongside allegations of a breach of contract, are sufficient to raise a duty to defend." Id. at 946. The United States Court of Appeals for the Ninth Circuit (Ninth Circuit) phrased the issue as whether under Hawaiʻi law "a claim for a negligent breach of contract can constitute an occurrence under a CGL policy."[5] Id. at 946. In addressing the issue, the Ninth Circuit surveyed existing Hawaiʻi law and noted several principles:

> The Hawaii Supreme Court has held, however, that where an underlying complaint alleges an intentional breach of contract, there is no occurrence that triggers an insurer's duty to defend under a standard CGL policy.
>
> . . . .
>
> . . . [The Hawaii Supreme Court has] stated: "we now hold that Hawaii law will not allow tort recovery in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of contract." [*Francis v. Lee Enters., Inc.*, 89 Hawaiʻi 234, 244, 971 P.2d 707, 717 (1999)].

---

[5] The Ninth Circuit noted that the Hawaiʻi Supreme Court has not addressed this issue, Oceanic, 383 F.3d. at 946, and so, at the outset, the Ninth Circuit stated that "[t]o the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." Id. at 944 (internal quotation marks, citation, and brackets in original omitted).

> The Hawaii Supreme Court has also cautioned of the need to examine carefully a complaint to "ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflected manifestly intentional, rather than negligent conduct." *Dairy Road Partners [v. Island Ins. Co., 92 Hawai‘i 398, 417]*, 992 P.2d [93,] 112 [(2000)]; *see also Bayudan v. Tradewind Ins. Co.*, 87 Hawai‘i 379, [387,] 957 P.2d 1061, 1069 (1998).

<u>Id.</u> at 946-48. Applying these principles, the Ninth Circuit concluded that the homeowners' allegations of negligence "cannot be read to constitute an occurrence under Hawaii law." <u>Id.</u> at 948. The court reasoned that because the allegations were ancillary to the breach of contract claim, they could not "state a separate independent cause of action for negligence." <u>Id.</u>

> Though certain allegations in the homeowners' counterclaim are couched in terms of negligence, it is undisputed that Oceanic had entered into a contract to construct a home for the homeowners. The counterclaim then alleges that Oceanic breached its *contractual duty* by constructing a residence "substantially inferior to the standard of care and quality which had been agreed." Other than a breach of that contractual duty, the facts in this case do not reflect a breach of an independent duty that would otherwise support a negligence claim. In Hawaii, an occurrence "cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions." *Hawaiian Holiday Macadamia Nut [Co. v. Indus. Indem. Co.*, 76 Hawai‘i 166, 170,] 872 P.2d [230,] 234 [(1994)] (citing *AIG Hawaii Ins. Co. [v. Estate of Caraang*, 74 Hawai‘i 620, 635-36,] 851 P.2d [321,] 329 [(1993)]). If Oceanic breached its contractual duty by constructing a sub-standard home, then facing a lawsuit for that breach is a reasonably foreseeable result.

<u>Id.</u> The Ninth Circuit observed that "[a]llowing recovery for disputes between parties in a contractual relationship over the quality of work performed would convert this CGL police into a professional liability policy or a performance bond." <u>Id.</u> at 949.

The Ninth Circuit noted that its holding was consistent with <u>WDC Venture</u> and its progeny. <u>Oceanic</u>, 383 F.3d at 949 ("[O]ur holding is consistent with the line of cases from the District of Hawaii that hold that contract and contract-based

tort claims are not within the scope of CGL policies under Hawaii law.").

The Ninth Circuit addressed Oceanic's argument "that WDC Venture no longer accurately represents Hawaii law because the California case upon which WDC Venture relied, Stanford Ranch, Inc. v. Maryland Cas. Co., 883 F. Supp. 493 (E.D. Cal. 1995), has been implicitly overruled by Vandenberg v. Superior Court, 21 Cal. 4th 815, 88 Cal. Rptr. 2d 366, 982 P.2d 229 (1999)." Oceanic, 383 F.3d at 949. The Ninth Circuit explained that Vandenberg rejected the tort/contract distinction for purposes of CGL insurance coverage and held that insurers "'cannot avoid coverage for damages awarded against [the insured] solely on the grounds the damages were assessed on a contractual theory.' [Vandenberg, 982 P.2d] at 246." Oceania, 383 F.3d at 950. The Ninth Circuit then explained:

> Unlike California however, Hawaii has not rejected the distinction between contract and tort-based claims, and Oceanic fails to cite authority that would suggest otherwise. To the contrary, the Hawaii Supreme Court has stated that allowing tort recovery based on a breach of contract "unnecessarily blurs the distinction between -- and undermines the discrete theories of recovery relevant to -- tort and contract law." Francis, [89 Hawai'i at 235,] 971 P.2d at 708. We therefore conclude that changes in California law do not affect our application of Hawaii law.

Id. at 951.

In Burlington Insurance Co. v. United Coatings Manufacturing Co., 518 F. Supp. 2d 1241, 1249 (D. Hawai'i 2007), the district court read WDC Venture, its progeny, and Oceanic for the proposition that "under Hawaii law 'contract and contract-based tort claims are not within the scope of CGL policies.'"

> Courts have employed different terms to articulate this "contract-based" standard, including "arising only from the contract," "stemming directly from the contract," "derivative of the contractual relationship," "based on breach of contract," "claims dependent upon the existence of an underlying contract," "contract-like claims," "other than a breach of that contractual duty," and "but for the contractual relationship." See generally Burlington Ins. Co., 383 F.3d at 948, 953, 955; [State Farm Fire & Cas. Co. v.] Lau, 2007 WL 1288153, at *4 [(D. Haw. Apr. 30, 2007)]; State Farm Fire & Cas. Co. v. Scott, 2007 U.S. Dist. Lexis 8255, at *24 (D. Haw. Jan. 24, 2007); CIM Ins. Corp. v.

*Midpac Auto Ctr.*, 108 F. Supp. 2d 1092, 1100 (D. Haw. 2000); *CIM Ins. Corp. v. Masamitsu*, 74 F. Supp. 2d 975, 987 (D. Haw. 1999); *WDC Venture*, 938 F. Supp. at 677, 679. Whatever the phrasing, the relevant query is whether the *genesis* or *origin* of the underlying claims, including those sounding in tort, is premised on a contractual relationship or is based on an independent tort claim under state law.

United Coatings, 518 F. Supp. 2d at 1250-51 (footnote omitted).

Plaintiffs highlight precedent from outside Hawai'i holding that construction defect claims are covered claims under CGL policies.

There is a split of authority on the issue. Gen. Sec. Indem. Co. v. Mountain States Mut. Cas. Co., 205 P.3d 529, 534 (Colo. Ct. App. 2009) ("There is a split among other jurisdictions whether a defective workmanship claim, standing alone, is an 'occurrence' under CGL policies."). The line of federal cases applying Hawai'i law follow the majority position.

A majority of those jurisdictions has held that claims of poor workmanship, standing alone, are not occurrences that trigger coverage under CGL policies similar to those at issue here. *See J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2nd Cir. 1993); *State Farm Fire & Cas. Co. v. Tillerson*, 334 Ill. App. 3d 404, 268 Ill. Dec. 63, 777 N.E.2d 986 (2002); *Pursell Constr., [Inc. v. Hawkeye-Sec. Ins. Co.]*, 596 N.W.2d 67 [(Iowa 1999)]; *Auto-Owners [Ins. Co. v. Home Pride Cos.]*, 684 N.W.2d [571,] 576 [Neb. 2004)]; *Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888 (2006); *L-J, Inc. v. Bituminous Fire & Marine Ins.*, 366 S.C. 117, 621 S.E.2d 33 (2005); Christopher Burke, *Construction Defects and the Insuring Agreement in the CGL POlicy--There is no Coverage for a Contractor's Failure to Do What it Promised*, Prac. L. Inst.: Litig. No. 8412, Insurance Coverage 2006: Claim Trends and Litigation 73, 82 (May 2006) (Burke) (collecting cases) ("Courts from no less than 25 states have adopted the position that there is no coverage [under CGL policies] for construction defect claims.").

Gen. Sec., 205 P.3d at 535.

The cases Plaintiffs cite follow the minority position:

In contrast, a minority of jurisdictions has held that the damage resulting from faulty workmanship is an accident, and thus, a covered occurrence, so long as the insured did not intend the resulting damage. *See Great Am. Ins. Co. v. Woodside Homes Corp.*, 448 F. Supp. 2d 1275 (D. Utah 2006); *United States Fire Ins. Co. v. J.S.U.B. Inc.*, 979 So. 2d 871 (Fla. 2007); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 137 P.3d 486 (2006); *Travelers Indem. Co. [of Am.] v. Moore & Assocs., Inc.*, 216 S.W.3d 302 (Tenn. 2007); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242

S.W.3d 1 (Tex. 2007); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 268 Wis. 2d 16, 673 N.W.2d 65, 83 (2004).

Id.

We hold that under Hawai'i law, construction defect claims do not constitute an "occurrence" under a CGL policy. Accordingly, breach of contract claims based on allegations of shoddy performance are not covered under CGL policies. Additionally, tort-based claims, derivative of these breach of contract claims, are also not covered under CGL policies.

## IV.

The "Order Granting Defendant Admiral Insurance Company's Motion for Partial Summary Judgment Re: No Duty to Indemnify, Filed on June 25, 2008" filed on September 23, 2008 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Wesley H. Sakai, Jr.
(Bendet, Fidell, Sakai & Lee)
Melvyn M. Miyagi
(Watanabe & Ing, LLP)
for Plaintiffs/Counterclaim
Defendants-Appellants/
Cross-Appellees.

Joseph F. Kotowski, III
Allen R. Wolff (Olshan Grundman
Frome Rosenzweig & Wolosky LLP)
for Defendant/Counterclaimant/
Cross-Claimant-Appellee/
Cross-Appellant Admiral
Insurance Company.