**STANFORD RANCH, INC., a California Corporation, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY and Does 1 through 25, inclusive, Defendants.**

**No. CIV–S–94–1578–DFL–JFM.**

United States District Court, E.D. California.

Feb. 8, 1995.

---

Patrick T. Markham, Law Office of Patrick T. Markham, Sacramento, CA, for plaintiff.

James C. Nielsen, Thomas H. Nienow, Wright, Robinson, McCammon, Osthimer & Tatum, San Francisco, CA, for defendants.

### MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

In this insurance coverage dispute, the parties have brought cross motions for summary judgment.

I

This case arises from difficulties in developing Stanford Ranch, a development of new single-family homes on a large expanse of land near Rocklin. Plaintiff Stanford Ranch ("Stanford") has served in a master developer role, subdividing and selling tracts of land to other developers. (Defs.' Mem.Supp. Summ.J. at 2.) The underlying lawsuits in this case were based on separate contracts for the sale of land to three such sub-developers. *Centex Real Estate Corp. v. Stanford Ranch, Inc.*, Placer County Superior Court No. 83221 (filed Oct. 7, 1988); *Prudential Development Co. v. Stanford Ranch, Inc.*, Placer County Superior Court No. 83239 (filed Oct. 11, 1988); *Covington Homes, Northern California v. Stanford Ranch, Inc.*, Placer County Superior Court No. 83185 (filed Oct. 5, 1988). (First Am.Compl. ¶¶ 9, 10, 11.) These three deals unraveled because of complications caused by the presence of wetlands and vernal pools on the properties involved. (Pl.'s Mem. Opp'n Defs.' Mot. Summ.J. at 7–8.) In order to obtain regulatory approval for the subdivisions, Stanford Ranch needed to obtain permits from the U.S. Army Corps of Engineers for filling some of the wetlands. (Defs.' Mem.Supp. Summ.J. at 3, 6–7.) When this approval proved impossible to obtain and the deals collapsed, each of the developers sued Stanford Ranch for fraud and breach of contract based on highly similar facts. Defendants Maryland Casualty Company and Northern Insurance Company's (collectively referred to as "Maryland") refusal to defend or indemnify Stanford in the state court actions led plaintiff to file the present action for breach of the insurance contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. (First Am.Compl. ¶¶ 18–34.) [1]

A critical question in the insurance litigation now before this court is the relationship of the underlying lawsuits to the contracts between the sub-developers and the Stanford Ranch. Each of the state court lawsuits contained both contract causes of action (spe-

---

1. Plaintiff seeks coverage and defense from Maryland under six separate policies, including three primary and three umbrella policies issued during different time periods. Stanford Ranch filed suit on September 3, 1994 in Sacramento County Superior Court. Defendants removed the action to this court based on the diverse citizenship of the parties.

cific performance, breach of contract, breach of the covenant of good faith and fair dealing) and tort causes of action (including intentional and negligent misrepresentation and concealment or non-disclosure). (Defs.' Mem. Supp.Summ.J. at 5–6, 7, 8.) In each of the cases, the contract was for sale of a proposed subdivided piece of Stanford Ranch. Therefore, each contract was conditional on the City of Rocklin's approval of the subdivision of the larger property. (Pl.'s Mem. Opp'n Defs.' Mot.Summ.J. at 6.) The contracts were also dependent on Stanford Ranch's parallel efforts to obtain a permit from the Army Corps of Engineers to fill certain wetlands on the properties. The sub-developer plaintiffs in each of the underlying suits alleged that Stanford Ranch misrepresented and failed to disclose the amount and significance of the wetlands on the properties involved, and misstated the likelihood of obtaining government approvals within the agreed-upon time frames. (Defs.' Mem. Supp.Summ.J. at 3–8.)[2] These alleged misrepresentations were tortious only because of the contracts for the sale of the land between the parties, which imposed upon Stanford Ranch the duty of disclosure and made significant the allegedly misleading statements.

Defendants Maryland Casualty Company and Northern Insurance Company assert several independent grounds on which judgment may be entered in their favor. First, defendants claim that the underlying suits seek damages arising out of breach of contract, which as a general rule are not recoverable under standard policy language granting coverage for "damages" which the insured is "legally obligated to pay." Second, defendants argue that California law does not permit insurance for fraud claims such as negligent misrepresentation and concealment. Finally, defendants analyze specific portions of the policies at issue, arguing that plaintiff's claims are not covered by sections addressing property damage, defamation, and personal injury coverage for invasion of the right to private occupancy.

The court need only reach the first of defendants' arguments, that Stanford's claims arise from breach of contract, for which there is no coverage.

## II

■ An insurer's duty to defend is broader than its duty to indemnify. *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). However, "the insurer's obligation to defend is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy." *Ins. Co. of the West v. Haralambos Bev.*, 195 Cal.App.3d 1308, 241 Cal.Rptr. 427, 430 (1987). Furthermore, "[w]hen the language is clear, a court should not give it a strained construction to impose on the insurer a liability it has not assumed." *Haralambos*, 241 Cal.Rptr. at 430 (*quoting St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal.App.3d 1199, 208 Cal.Rptr. 5 (1984)). Summary judgment as to the duty to defend is appropriate when there is no potential for coverage. *La Jolla Beach and Tennis Club, Inc., v. Indus. Indem. Co.*, 9 Cal.4th 27, 884 P.2d 1048, 36 Cal.Rptr.2d 100, 107 (1994).

■ All six of the policies at issue in this case restrict their coverage to sums that the

2. In the *Prudential Development* case, Prudential Development Company ("Prudential") alleged that Stanford Ranch did not disclose that it had filled some wetlands without authorization, and incorrectly stated that the wetlands subject to the permit did not exceed 10 acres. Prudential alleged that it was misled by these representations as to how long it would take to acquire the needed permit. Subsequently, Stanford Ranch allegedly misrepresented that the required permit had been issued and would be received "momentarily." In fact, no such permit was ever obtained. (Def.'s Mem.Supp.Summ.J. at 3–6.)

In the *Centex Development* case, Stanford Ranch allegedly failed to disclose that the project contained wetlands and that a permit would be required before the property could be sold. (Def.'s Mem.Supp.Summ.J. at 6–7.) Similarly, in the *Covington Homes* case, Stanford allegedly warranted that the property was free of wetlands and vernal pools. As in the *Prudential Development* case, the undisclosed presence of significant wetlands on the property and Stanford's unauthorized fill activities was alleged to have delayed the parties' ability to obtain the necessary permits, and ultimately to have caused the deals to collapse. (Def.'s Mem.Supp.Summ.J. at 8.)

In all three cases, Stanford eventually repudiated the original agreements when permits could not be obtained. (Def.'s Mem.Supp.Summ.J. at 3.)

insured becomes "legally obligated to pay as damages." (Decl. Kilkenny Supp.Def.'s Mot. Summ.J., Exs. A, B, C, D, E.) California courts interpret such language to cover tort but not contract liability. *Fragomeno v. Ins. Co. of the West,* 207 Cal.App.3d 822, 255 Cal.Rptr. 111, 114 (1989); *International Surplus Lines v. Devonshire Coverage,* 93 Cal. App.3d 601, 155 Cal.Rptr. 870, 874–75 (1979). The Ninth Circuit has recognized that California courts "uniformly" apply this interpretation. *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1365 (9th Cir.1991). When this language is present in the coverage portion of the policy, even the so-called "contractual liability coverage" which defendants have assumed in one of their policies does not extend to breach of contract. *Loyola Marymount v. Hartford Accident and Indem.,* 219 Cal. App.3d 1217, 271 Cal.Rptr. 528, 533 (1990); *Haralambos,* 241 Cal.Rptr. at 430; *Fireman's Fund v. City of Turlock,* 170 Cal. App.3d 988, 216 Cal.Rptr. 796, 800 (1985).[3]

■ The distinction between tort and contract liability is best outlined in a case cited by defendants, *Allstate Ins. Co. v. Hansten,* 765 F.Supp. 614 (N.D.Cal.1991). In *Hansten,* the insureds sold a house to the Wedekinds. As in this case, a dispute arose concerning disclosure issues, and the Wedekinds sued on both contract and tort theories. The court analyzed coverage of a negligence claim in the following manner:

> Although this claim does not refer to the Hanstens' contractual duties, the alleged harm could not have been realized without the contract to sell the house. Without the contract, the Hanstens would have had no duty of care toward the Wedekinds. Therefore, the duty alleged to have been breached was a contractual duty, and the policy does not cover such losses.

*Hansten,* 765 F.Supp. at 616. Under *Hansten* and all cases but one to examine the question, the issue is not whether a claim is framed in tort or in contract. The key question is whether the duty that gives rise to liability is independent of the contract or rests upon it. If liability stems from the contract, the policy will not cover any award even if some of the damages are based on tort claims arising from the contractual relationship. *Accord Home Indmen. Co. v. Avol,* 706 F.Supp. 728, 730–31 (C.D.Cal.1989), *aff'd without opinion,* 912 F.2d 469 (9th Cir.1990).

An example of a duty independent of the contract was found in *Aim v. Culcasi,* 229 Cal.App.3d 209, 280 Cal.Rptr. 766 (1991). In *Culcasi,* a waitress who had incurred medical costs sued her employer James Culcasi, claiming that he had agreed as part of her contract to provide her with health insurance. In addition to the contract cause of action, the waitress's complaint alleged that Culcasi had voluntarily assumed to send the waitress's health plan application to the insurer outside the contract. *Id.* at 769. The complaint thus stated a tort claim for the negligent failure to complete a voluntarily assumed undertaking. In the insurance action, the court held "[t]hat Culcasi may or may not also have had a *contractual* duty to send [the waitress's] health plan application to the insurer is irrelevant, for his duty to perform it with reasonable care independently arose when he volunteered to do it." *Id.* (emphasis in original). The insured's claim was within the scope of the "legally obligated to pay as damages" provision, because the tort cause of action would have arisen whether or not there was a contract.[4]

Several other cases besides *Hansten* have found no coverage where the tort duty is dependent upon the existence of a contract. Two of these cases hold that fraud-in-the-inducement claims, like the negligent misrepresentation claims here, are contractual if the duty of disclosure is predicated upon a contract. *Haralambos,* 241 Cal.Rptr. at 431 (Ct. App.1987); *Allstate Ins. Co. v. Morgan,* 806 F.Supp. 1460, 1464–65 (N.D.Cal.1992). *Mor-*

---

3. A modern California insurance treatise has described a contractual liability endorsement as providing "coverage only when there is tort liability. More specifically, the endorsement covers third party tort liabilities that the insured assumes by contract. It does not cover damages suffered by a third party as a result of the insured's breach of a contract entered into with that party." 3 Cal.Insurance Law and Practice (May 1989 cum. supp.) § 49.40[2], p. 30; *quoted in Loyola Marymount,* 271 Cal.Rptr. at 533.

4. The court upheld the insurer's denial of coverage on other grounds. *Id.* 280 Cal.Rptr. at 777.

*gan* involved a highly similar situation to the one here: purchasers of real property asserted misrepresentation and nondisclosure claims because the land involved had been damaged before the contract was signed. 806 F.Supp. at 1462. The court found no coverage because "but for that contract, there could be no claim for negligence." *Id.* at 1464; *see also Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1365 (9th Cir.1991) (homeowner's policy provided no coverage for negligence and intentional infliction of emotional distress because claims based on breach of contract); *Fireman's Fund,* 216 Cal.Rptr. at 800–02 (no coverage because absent contractual promise for non-disclosure, city could not have been liable, despite possible privacy and defamation claims); *Fragomeno,* 255 Cal.Rptr. at 116–17 (no coverage for unlawful detainer action based on landlord-tenant contract).

■ Based on these authorities, there can be no coverage for the intentional misrepresentation, negligent misrepresentation and non-disclosure claims in the three underlying cases here. Without the contracts for the sale of the land, Stanford Ranch would have had no duty to disclose the existence of the wetlands to the plaintiffs, or to provide accurate statements concerning the likelihood of government approvals. The underlying claims in this case are dependent on the parties' contracts and therefore barred by the "legally obligated to pay as damages" policy language.[5]

Plaintiff attempts to avoid the great weight of countervailing authority by arguing that almost all the cases cited above are distinguishable. Stanford Ranch contends that the majority of defendants' cases involve property damage policy provisions, while plaintiff relies on personal injury coverage for "wrongful entry or eviction or other invasion of the right of private occupancy." For Stanford Ranch, the "other invasion of the right of private occupancy" language is inherently contractual in nature, and therefore

takes precedence over the policy's general restriction to tortious injuries.

Plaintiff's argument cannot prevail, however, because California authority is contrary. The only California Court of Appeal decision to discuss the specific policy provision at issue reached the opposite conclusion, finding that the restriction to tort liability fully applies to policy coverage for "wrongful entry or eviction, or other invasion of the right of private occupancy." *Fragomeno,* 255 Cal. Rptr. at 113, 116. In *Fragomeno,* the insureds sought coverage for an unlawful detainer proceeding against them based on alleged breach of an existing, unexpired lease. *Id.* at 115. The court ruled against the insureds because their claim had "its inception in a contractual arrangement between the parties." *Id.* at 116. The court noted that the claim would be tortious if based upon "possession of property by a trespasser ab initio, or by a holdover tenant as a resulting trespasser, or by an encroacher." *Id.* In these situations, the tort claim would have arisen independently of any contract, fully consistent with the distinction discussed above.

Even apart from the *Fragomeno* case, plaintiff's argument must confront the solid line of authority in the California Courts of Appeal restricting coverage to tort liability without reference to the individual policy language in dispute. The California courts' approach is logical, because the structure of the contract indicates that the "legally obligated to pay as damages" restriction applies to all of its provisions.

Plaintiff instead bases its argument on a federal district court opinion interpreting California law, *American States Ins. Co. v. Canyon Creek,* 786 F.Supp. 821 (N.D.Cal. 1991). Like *Fragomeno,* however, the *Canyon Creek* court found that the restriction to tort liability applied to policy language concerning "other invasion of the right of private occupancy." *Id.* at 828–29. The *Canyon*

---

5. In Stanford's reply, plaintiff argues that the filling of wetlands before the contracts for sale of the property were signed cannot represent breaches of contract and therefore must be considered tort liabilities. However, as with their other claims, the subdividers had no claims re-

garding the wetland fill apart from their contracts. *See Morgan,* 806 F.Supp. at 1464 (finding no coverage for misrepresentation claims concerning damage to real property caused by failure to dredge under a dock before the contract for sale was signed).

*Creek* court found that there was coverage only by applying the tort/contract distinction in a manner inconsistent with California authority. Four different groups of homeowners had sued NEV, a developer of manufactured housing, for intentional and negligent misrepresentation and unfair business practices. *Id.* at 823. The plaintiffs in the underlying suit alleged they were falsely told that their development would be approved by local authorities, and that they would have the right to own the land beneath their mobile homes. *Id.*

American States argued unsuccessfully that the negligent misrepresentation claims in the underlying suit were based on contractual liability. *Id.* at 829. In ruling against American States, the court found that, "[p]laintiffs do not frame these allegations as a breach of contract claim, but rather, as a fraud or misrepresentation claim." *Id.* On these grounds, the court found that the asserted liability was in tort rather than in contract. Thus, in contrast to all the authorities discussed above, the court classified the underlying action based on how the claim was framed, rather than whether or not it was dependent on the existence of the parties' contract. *Canyon Creek* thus diverges from the approach taken by numerous California Courts of Appeal, and also differs from the subsequent Ninth Circuit decision in *Chamberlain*. *See* 931 F.2d at 1365. Furthermore, *Canyon Creek* does not take into account the *Haralambos* decision, which recognized that fraud in the inducement claims are not covered when they depend on the existence of a contract. *See* 241 Cal.Rptr. at 431.[6] For these reasons, *Canyon Creek* is not persuasive authority in this one respect.

Plaintiff also relies on *Zurich Ins. Co. v. Killer Music Inc.*, 998 F.2d 674 (9th Cir. 1993). However, defendants rely on this case as well, and it is consistent with Maryland's interpretation of the distinction between tort and contract liability. In *Killer Music*, the court held that there was a duty to defend because the claim could be characterized as sounding in tort. 998 F.2d at 678. Killer Music had agreed to sell a music pro-

ducer's songs and jingles to radio and television stations. *Id.* at 676–77. After the contract had expired, Killer Music sold a music library without compensation or attribution to the producer. *Id.* The court did not explain why the producer's suit for copyright infringement, unfair competition and related claims could be characterized as tortious rather than contractual. Defendants suggest that once the contract had expired, the court considered the suit as no longer for breach of contract, but an independent action for copyright infringement. The court's reliance on *Fragomeno* suggests that defendants may well be correct, because the distinction between existing and expired leases was critical to the *Fragomeno* court's decision. *Fragomeno* found that unlawful detainer actions based on existing leases were contractual in nature, while unlawful detainer actions against a holdover tenant involved the tort of trespass independent of any contract. *Fragomeno*, 255 Cal.Rptr. at 116.

Thus, Maryland had no duty to defend or indemnify Stanford Ranch, because the parties' insurance agreement provided no coverage for claims premised upon the existence of a contract. Furthermore, because defendants had no duty to defend Stanford Ranch, Maryland cannot have breached its covenant of good faith and fair dealing. *Brodkin v. State Farm Fire and Casualty Co.*, 217 Cal. App.3d 210, 265 Cal.Rptr. 710, 714 (1989).

### III

For the reasons stated above, defendants' motion for summary judgment on all plaintiff's claims is GRANTED. Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

---

6. The *Morgan* decision, which post-dated *Canyon Creek,* reached the same conclusion as *Haralam-* bos in finding no coverage for misrepresentation claims. 806 F.Supp. at 1464.