The **BURLINGTON INSURANCE COMPANY,** Plaintiff–Appellee,

v.

**OCEANIC DESIGN & CONSTRUCTION, INC.,** Defendant–Appellant.

No. 02–17317.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 11, 2004.*

Filed Sept. 8, 2004.

---

8. Because we conclude that Smith cannot establish cause, we need not consider whether he has met the prejudice prong.

* Appellant moved for submission without oral argument. The panel granted the motion, unanimously finding the case suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2).

Gerald S. Clay and Scott I. Batterman, Stanton Clay Chapman Crumpton & Iwamura, Honolulu, HI, for the defendant-appellant.

Stephen B. MacDonald and Ralph O'Neill, MacDonald Rudy Byrns O'Neill & Yamauchi, Honolulu, HI, for the plaintiff-appellee.

Before: TASHIMA and CLIFTON, Circuit Judges, and LEIGHTON, District Judge.**

---

** The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

CLIFTON, Circuit Judge:

The issue presented by this case is whether, under Hawaii law, a company which contracted to build a house is covered under its commercial general liability policy against claims brought against the company by the dissatisfied homeowners. The district court granted summary judgment to the insurer on the ground that claims for breach of contract and breach of contract-related tort duties did not give rise to coverage within the scope of the policy. We affirm.

## I. BACKGROUND

Defendant–Appellant Oceanic Design & Construction, Inc., a Hawaii corporation, contracted to build a single-family residence in Honolulu, Hawaii for homeowners Jeanette C. Chae, Susan K. Woo, and Diana Han (a/k/a Diana Chong) (collectively the "homeowners"). Construction was completed, but not to the satisfaction of the homeowners, and they refused to pay. Oceanic filed suit against the homeowners in Hawaii state court in April 1999, alleging the homeowners had breached the contract by failing to pay the balance due. *See Oceanic Design & Constr., Inc. v. Jeanette C. Chae, et al.*, Civil No. 99–1536–04, Circuit Court of the First Circuit, State of Hawaii (the "underlying lawsuit").

The homeowners asserted a counterclaim against Oceanic in that lawsuit, alleging five causes of action: (1) breach of contract; (2) breach of express and implied warranties; (3) deceptive trade practices;[1] (4) negligent and/or intentional infliction of emotional distress upon homeowner Han; and (5) punitive damages. The gravamen of the homeowners' allegations was that Oceanic improperly designed and/or con-

structed the foundation of the residence causing earth movement and resulting in physical and structural damage to both the residence and the retaining walls on the property.

At the time the counterclaim was filed, Oceanic was the named insured under a standard-form commercial general liability ("CGL") insurance policy issued by Defendant–Appellee Burlington Insurance Company.[2] Coverage A of the policy, titled "Bodily Injury and Property Damage Liability," provided that Burlington will "pay those sums that the insured becomes legally obligated to pay because of 'bodily injury' or 'property damage' to which this insurance applies." The policy further provided that Burlington has the "right and duty to defend the insured against any 'suit' seeking those damages," but "no duty to defend the insured against any 'suit' seeking damages ... to which this insurance does not apply." Coverage was limited to " 'bodily injury' or 'property damage' caused by an 'occurrence.' " The policy defined "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but did not define "accident." Coverage was excluded for " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

Oceanic timely tendered defense of the counterclaim to Burlington. Burlington agreed to defend under a reservation of rights. Burlington then filed this action in the district court seeking a declaration that the CGL policy did not provide coverage against the homeowners' counterclaim.

Burlington moved for summary judgment, arguing that none of the allegations in the counterclaim were covered under

---

1. The deceptive trade practices claim was based on Oceanic's alleged violation of HAW REV. STAT. § 481A–3.

2. Burlington's policy covered Oceanic from July 28, 1997 through July 28, 1999.

the policy. Oceanic filed a cross-motion for summary judgment, asserting that it was entitled to a defense from Burlington because there was a possibility that one or more of the allegations in the counterclaim were covered under the policy. The district court concluded that the claims alleged in the counterclaim were contract or contract-based tort claims not within the scope of coverage of the CGL policy.[3] Accordingly, the district court granted Burlington's motion for summary judgment and denied Oceanic's cross-motion for summary judgment.

Oceanic timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

We review de novo a district court's decision to grant summary judgment and apply the same summary judgment standard employed by the district court. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir.2003). Therefore, we must determine, viewing the evidence in the light most favorable to Oceanic, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Id.* The district court's interpretation of state law is reviewed under the same de novo standard that is used to review questions of federal law. *Conestoga Servs. Corp. v. Executive Risk Indem., Inc.*, 312 F.3d 976, 981 (9th Cir.2002).

To the extent this case raises issues of first impression, our court, sitting in diversity, "must use [its] best judgment to predict how the Hawaii Supreme Court would decide[the] issue." *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir.1997). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980).

Hawaii insurance law provides for a broad duty to defend arising whenever the pleadings raise a potential for indemnification liability of the insurer to the insured. *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Hawai'i 166, 872 P.2d 230, 233 (Haw.1994). The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed. *See Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 832 P.2d 733, 736 (1992). "Furthermore, where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." *Hawaiian Holiday*, 872 P.2d at 233 (citation and quotation marks omitted).

Hawaii adheres to the "complaint allegation rule." *Pancakes of Hawaii, Inc. v. Pomare Props. Corp.*, 85 Hawai'i 286, 944 P.2d 83, 88 (App.1997). The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.' " *Hawaiian Holiday*, 872 P.2d at 233 (cita-

---

**3.** The district court held that the homeowners' claims for breach of express and implied warranties, deceptive trade practices, and punitive damages were not within the scope of coverage. Oceanic does not challenge this portion of the ruling on appeal. Accordingly, we only consider the possibility of coverage for the homeowners' remaining claims.

tion omitted). In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech. *Dairy Road Partners v. Island Ins. Co.*, 92 Hawai'i 398, 992 P.2d 93, 106 (2000). Each policy is to be interpreted according to the entirety of its terms and conditions. *See AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 851 P.2d 321, 326 (1993). "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." *Dairy Road Partners*, 992 P.2d at 107 (citation and quotation marks omitted).

Both parties have acknowledged that there are no genuine issues of material fact. We are therefore asked to decide whether any of the claims asserted against Oceanic by the homeowners in the underlying lawsuit are covered under the policy to trigger Burlington's duty to defend.

The policy covers claims for liability for "bodily injury" or "property damage" if "caused by an occurrence." Because Burlington has conceded for purposes of appeal that the counterclaim has alleged both "bodily injury" and "property damage," we must decide whether, under Hawaii law, any of the homeowners' allegations present the possibility that their damages were caused by an "occurrence," for which there is coverage under the policy.

### A. Homeowners' Negligent Breach of Contract Allegation

Oceanic argues that the policy potentially covers the "other acts" claim asserted in paragraph 10(*l*) of the homeowners' counterclaim. That claim reads in context:

### FIRST CAUSE OF ACTION

#### BREACH OF CONTRACT

8. [Homeowners] contracted with [Oceanic] on or about December 1, 1998 for the construction and supervision of the Poola Street residence.

9. In consideration of the services described above, [Oceanic] was paid certain sums of money.

10. [Oceanic] breached its contractual obligations in at least the following respects:

 a. Failure to properly plan, supervise, inspect, and construct the Poola Street residence, including but not limited to the retaining walls and the preparation of the soils and/or foundation of the residence;

 b. Failure to ensure that said Poola Street residence was free from faults and defects;

 c. Planned, designed, engineered, and constructed a structure which was unable to support foreseeable loads;

 d. Planned, designed, engineered, and constructed a structure which was susceptible to water and earth movement damage;

 e. Violated applicable State of Hawaii, County of Honolulu and/or Uniform building codes, ordinances, laws and regulations;

 f. Planned, designed, engineered, and constructed a residence and [sic] substantially inferior to the standard of care and quality which had been agreed;

 g. Identified for use or allowed to be used, improper construction materials, techniques and methods;

 h. Failure to use reasonable care in performing contractual obligations appropriate for this type of construction in this particular location;

 i. Failure to provide services in accordance with the standard of care appropriate for the plan, design, engineering, supervision, inspection

and construction of this type of residence in this particular location;

j. Breached the implied warranty of merchantability for services rendered;

k. Proposed inadequate, improper and negligent plans, designs, specifications and related revisions thereto;

l. *Committed other acts and omissions amounting to misfeasance, malfeasance and nonfeasance.*

11. As a direct, proximate and foreseeable result of [Oceanic's] breaches of contract, [Homeowners] have suffered substantial damage....

12. As a direct and further result of the breaches of contract by the [Oceanic]. [Homeowners] have sustained consequential damages....

(emphasis added).

Relying on a line of cases from the District of Hawaii, the district court held that Burlington did not owe Oceanic a duty to defend the homeowners' "other acts" allegation. Those cases hold that contract and contract-based tort claims are not within the scope of CGL policies. *See CIM Ins. Corp. v. Midpac Auto Ctr., Inc.,* 108 F.Supp.2d 1092, 1099–1100 (D.Haw. 2000); *CIM Ins. Corp. v. Masamitsu,* 74 F.Supp.2d 975, 986 (D.Haw.1999); *WDC Venture v. Hartford Accident and Indem. Co.,* 938 F.Supp. 671, 679 (D.Haw.1996).

Oceanic asserts that the district court erred because allegations of negligence, even alongside allegations of a breach of contract, are sufficient to raise a duty to defend.

We note at the outset that the Hawaii Supreme Court has not resolved whether a claim for a negligent breach of contract can constitute an occurrence under a CGL policy. The Hawaii Supreme Court has held, however, that where an underlying complaint alleges an intentional breach of contract, there is no occurrence that triggers an insurer's duty to defend under a standard CGL policy. *See Hawaiian Holiday,* 872 P.2d at 233–34. In that case, prompted by a failed business venture, plaintiffs filed suit alleging that the insured had purposely planted fewer trees than that had been agreed upon in the contract and had planted trees and seedlings which did not meet contract requirements. As here, the issue was whether the alleged damage was caused by an "occurrence" under the policy.[4] The Hawaii Supreme Court noted that it had previously addressed what constitutes an "accident": "[I]n order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions." *Id.* at 234 (citing *AIG Hawaii Ins. Co.,* 851 P.2d at 329).

In holding that the insurer had no duty to defend, the court recognized that the plaintiffs' complaint alleged breach of contract and fraud claims "based on intentional acts performed by Hawaiian Holiday" and sought "contractual relief." *Id.* at 234, 851 P.2d 321. The court held that because the "conduct alleged was not accidental" and "did not sound in negligence," it did

4. The definition of occurrence in *Hawaiian Holiday* was nearly identical to the one at issue here. There, "occurrence" was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the viewpoint of the insured." *Hawaiian Holiday,* 872 P.2d at 234. Here, " 'occurrence' means an accident, including continuous or repeated exposure to substantially the same harmful conditions," where coverage is excluded for " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

not constitute an occurrence within the meaning of the CGL policy. *Id.* at 235, 851 P.2d 321. The court did not discuss whether facts alleging a *negligent* breach of contract claim could trigger the duty to defend.

■ Language from a recent Hawaii Supreme Court case indicates, however, that Hawaii would not recognize a claim for a negligent breach of contract. In *Francis v. Lee Enters., Inc.*, 89 Hawai'i 234, 971 P.2d 707, 708 (1999), an employee filed suit in Hawaii state court for tortious breach of an employment contract after he had been terminated. After the case was removed to the federal district court, the district court certified the following question to the Hawaii Supreme Court: "Does Hawaii law recognize a tortious breach of contract cause of action in the employment context?"

To answer that question, the court first turned to its prior decisions. It recognized that in *Dold v. Outrigger Hotel*, 54 Haw. 18, 501 P.2d 368 (1972), it had established the rule that "where a contract is breached in a wanton or reckless manner [so] as to result in a tortious injury, the aggrieved person is entitled to recover in tort." [5] *Francis*, 971 P.2d at 710 (quoting

*Dold*, 501 P.2d at 372) (quotation marks omitted). The court also noted it had reaffirmed and extended the *Dold* rule to the commercial contract setting in *Chung v. Kaonohi Center Co.*, 62 Haw. 594, 618 P.2d 283, 289 (1980). *Francis*, 971 P.2d at 710. ("We do not think that the dispositive factor in allowing damages for emotional distress is the nature of the contract. The dispositive factor is, rather, the wanton or reckless nature of the breach.") (quoting *Chung*, 618 P.2d at 289) (quotation marks omitted).[6]

Nonetheless, the court concluded that the *Dold–Chung* rule should not apply in the employment context, and abolished the rule altogether. *Id.* at 712, 618 P.2d 283. The court reasoned, "the *Dold–Chung* rule unnecessarily blurs the distinction between—and undermines the discrete theories of recovery relevant to—tort and contract law." *Id.* The court noted that "[t]he distinction between tort and contract law is well established in common law, and distinct objectives underlie the remedies created in each area." *Id.* It recognized that the court's objective in contract law is to ascertain and effectuate the intention of the parties, whereas tort law is primarily designed to vindicate social policy. *Id.*

---

5. In *Dold*, plaintiffs, tourists from the mainland, arranged for hotel accommodations at a particular hotel. Upon arrival, however, due to the lack of availability, plaintiffs were refused accommodation and were transferred to a lesser quality hotel. Plaintiffs sued for actual and punitive damages based on the alleged breach of contract. The trial court refused an instruction on punitive damages but permitted one on damages for emotional distress. The jury found in favor of plaintiffs. On appeal, the Hawaii Supreme Court affirmed, holding that "the jury was properly instructed on the issue of damages of emotional distress." *Dold*, 501 P.2d at 372.

6. In *Chung*, plaintiffs were prospective lessees of a concession space for a fast-food restaurant. Although the contract to lease the prop-

erty had been signed by the plaintiffs, the defendant continued to negotiate a lease for the same space with three additional parties. The defendant ultimately leased the space to one of those parties, despite the fact that defendant was aware of the effort and funds the plaintiffs had expended in reliance on the lease. The trial court gave an instruction that allowed the jury to award damages for emotional distress. The jury awarded plaintiffs damages for emotional distress and the defendant appealed, arguing that the *Dold* rule should only apply in special circumstances, i.e., contracts for marriage, burial, and delivery of personal messages. The Hawaii Supreme Court disagreed and extended the *Dold* rule to the commercial contract setting. *Chung*, 618 P.2d at 289.

The court thus concluded that because contract damages are normally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by the parties at the time, "damages for emotional distress ... are generally *not* recoverable in contract." *Id.* at 712–13, 618 P.2d 283 (citation and quotation marks omitted) (emphasis in original).

As to the certified question, the court accordingly answered it in the negative. It stated: "we now hold that Hawaii law will not allow tort recovery in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." *Id.* at 717, 618 P.2d 283.

The Hawaii Supreme Court has also cautioned of the need to examine carefully a complaint to "ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflected manifestly intentional, rather than negligent conduct." *Dairy Road Partners,* 992 P.2d at 112; *see also Bayudan v. Tradewind Ins. Co.,* 87 Hawai'i 379, 957 P.2d 1061, 1069 (1998).

■ Applying these principles to this case, we conclude that the homeowners' "other acts" allegation cannot be read to constitute an occurrence under Hawaii law. As the district court explained, "[t]he allegations of 'other acts and omissions' is clearly and unambiguously included as one of several 'sub' allegations of the homeowners' breach of contract claim. As a result, the Court cannot fairly construe this language to state a separate independent cause of action for negligence." In Hawaii, it is well established that a cause of action founded on negligence requires an assertion that a defendant has breached "[a] duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Dairy Road Partners,* 992 P.2d at 114 (citations omitted).

■ Though certain allegations in the homeowners' counterclaim are couched in terms of negligence, it is undisputed that Oceanic had entered into a contract to construct a home for the homeowners. The counterclaim then alleges that Oceanic breached its *contractual duty* by constructing a residence "substantially inferior to the standard of care and quality which had been agreed." Other than a breach of that contractual duty, the facts in this case do not reflect a breach of an independent duty that would otherwise support a negligence claim. In Hawaii, an occurrence "cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions." *Hawaiian Holiday Macadamia Nut,* 872 P.2d at 234 (citing *AIG Hawaii Ins. Co.,* 851 P.2d at 329). If Oceanic breached its contractual duty by constructing a substandard home, then facing a lawsuit for that breach is a reasonably foreseeable result. Our reading comports with the rationale underlying a CGL policy:

> General liability policies ... are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products.

*Anthem Elec., Inc. v. Pac. Employers Ins. Co.,* 302 F.3d 1049, 1057 (9th Cir.2002). Allowing recovery for disputes between parties in a contractual relationship over the quality of work performed would convert this CGL policy into a professional liability policy or a performance bond.

Likewise, our holding is consistent with the line of cases from the District of Hawaii that hold that contract and contract-based tort claims are not within the scope of CGL policies under Hawaii law. In *WDC Venture v. Hartford Accident and Indem. Co.,* 938 F.Supp. 671 (D.Haw.1996), the district court considered whether, under Hawaii law, claims for breach of contract and tortious breach of contract were within the scope of coverage under a standard-form CGL. Noting that "there are no cases in Hawaii that are directly on point regarding the issue of insurance recovery for contract-based claims," the court looked to case law from other jurisdictions. *Id.* at 677–78. The court first looked to California law, which at the time held that a CGL policy did not cover contractual claims or tort claims arising from contractual relationships. The court then concluded, "[i]t is clear from the record that all of the claims in the underlying actions have a contractual basis.... Since [the insured] seeks recovery here for tort and contract claims *that arise from the contractual relationship,* the court finds that the underlying lawsuits are outside the scope of policy coverage in this case." *Id.* at 679 (citing *Stanford Ranch, Inc. v. Maryland Cas. Co.,* 883 F.Supp. 493 (E.D.Cal. 1995) (emphasis in original)).

As a second basis for its holding, the court explained:

[P]olicy coverage of such contractual-based allegations would be contrary to public policy. 'There is simply no reason to expect that such liability would be covered under a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury to another individual, or property damage to another's possessions, even if, perhaps, coverage of the policy has been expanded to cover other non-bodily injuries that sound in tort.'

*Id.* at 679 (quoting *Toombs NJ Inc. v. Aetna Cas. & Sur. Co.,* 404 Pa.Super. 471, 591 A.2d 304, 306 (1991)).

In a subsequent case from the District of Hawaii, *CIM Ins. Corp. v. Masamitsu,* 74 F.Supp.2d 975 (D.Haw.1999), the district court, citing *WDC Venture,* held that claims of fraud, misrepresentation, promissory estoppel, and breach of contract did not trigger a duty to defend as they were contract or contract-based claims and not within the scope of coverage. *Id.* at 986. Then, in *CIM Ins. Corp. v. Midpac Auto Center, Inc.,* 108 F.Supp.2d 1092 (D.Haw. 2000), the district court was again presented with the question of whether an insurer was required to defend allegations including breach of contract, tortious breach of contract, negligent misrepresentation, and mental anguish. *Id.* at 1099–1100. Analyzing each count separately, the district court held that the insurer had no duty to defend these claims because they were either based on the contract or premised on the existence of the contractual relationship between the parties. *Id.* at 1100–03.

Oceanic contends that *WDC Venture* no longer accurately represents Hawaii law because the California case upon which *WDC Venture* relied, *Stanford Ranch, Inc. v. Maryland Cas. Co.,* 883 F.Supp. 493 (E.D.Cal.1995), has been implicitly overruled by *Vandenberg v. Superior Court,* 21 Cal.4th 815, 88 Cal.Rptr.2d 366, 982 P.2d 229 (1999). In *Vandenberg,* the Supreme Court of California overruled *International Surplus Lines Ins. Co. v. Devonshire*

*Coverage Corp.*, 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (1979), the case which *Stanford Ranch* relied upon. *Vandenberg*, 88 Cal.Rptr.2d 366, 982 P.2d at 246.

Oceanic further argues that because *Vandenberg* was the basis of our holding in *Anthem Elec., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049 (9th Cir.2002), Burlington owes a duty to defend. We disagree.

Oceanic reads too deeply into *Vandenberg*. *Vandenberg* involved damage to a parcel of land that the insured had leased under an agreement to operate an automobile sales and service facility. *Vandenberg*, 88 Cal.Rptr.2d 366, 982 P.2d at 234. When the property reverted back to the landowners after the business was discontinued, the owners discovered that the soil and groundwater underlying the property had been contaminated. *Id.* at 234–35. The owners filed suit alleging breach of contract and negligence. The insured tendered defense of that claim to its insurers under its CGL policies. *Id.* at 235. Those policies provided coverage to the insured for sums the insured was "legally obligated to pay as damages." The issue before the California Supreme Court was whether this policy language precluded coverage for losses pleaded as contractual damages. *Id.* at 243. The insurers argued that the phrase, "legally obligated to pay as damages," referred only to tort liability and not contractual liability, citing *International Surplus* and a line of cases holding that any liability arising *ex contractu* (from a contract) as opposed to *ex delicto* (from a tort), was not covered under a CGL policy. *Id.* at 244. The reasoning behind those cases was that the phrase was intended to describe liability based on a breach of a duty imposed by law, i.e., tort, rather than by contract. *Id.*

The California Supreme Court disagreed and "reject[ed] the ex contractu/ex delicto distinction," explaining that "the *International Surplus* rationale, distinguishing contract from tort liability for purposes of the CGL insurance coverage phrase 'legally obligated to pay as damages,' is incorrect." *Id.* at 244. It held that the insurers "cannot avoid coverage for damages awarded against [the insured] solely on the grounds the damages were assessed on a contractual theory." *Id.* at 246.

The basis for the California Supreme Court's holding, however, was not that a breach of contract could constitute an occurrence under a CGL policy. Instead, the court's focus was on the policy phrase, "legally obligated to pay as damages." While the phrase was broad enough to include damages for breach of contract or tort, the court stressed that its interpretation of the phrase did not extend to "limitations imposed by other terms of the coverage agreement (e.g. bodily injury and property damage *caused by an occurrence.*)" *Id.* at 246 (citation omitted) (emphasis added). The court's rationale was that:

> the arbitrariness of the distinction between contract and tort in the *International Surplus* line of cases is evident when we consider the same act may constitute both a breach of contract and a tort. Predicating coverage upon an injured party's choice of remedy or the form of action sought is not the law of this state. . . . Instead courts must focus on the nature of the risk and the injury, in light of policy provisions, to make that determination.

*Id.* at 245 (citations omitted). But that is already the standard under Hawaii insurance law. *See Dairy Road Partners*, 992 P.2d at 112 (cautioning Hawaii courts to carefully examine a complaint to "ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reali-

ty, reflected manifestly intentional, rather than negligent conduct."); *see also Bayudan*, 957 P.2d at 1069.

Oceanic's reliance on *Anthem Electronics* is also misplaced. That case involved a contract where Anthem Electronics had agreed to supply KLA Instruments Corp. with circuit boards to be incorporated into scanners that KLA then sold. *Anthem*, 302 F.3d at 1052. When some of these scanners failed once in use by KLA's customers, it was discovered that the circuit boards that Anthem had supplied had latent defects due to manufacturing flaws. KLA was forced to replace the defective scanners and incurred other costs related to the loss of use of the scanners. *Id.* KLA filed suit in California state court to recoup these costs alleging causes of action against Anthem for breach of contract and negligence. Anthem tendered the complaint to its two CGL insurers and requested defense of the suit. *Id.* at 1052–53. We were thus faced with the issue of whether, under California law, the Anthem complaint established the possibility of a covered occurrence. In holding that the complaint raised a possibility of coverage and therefore triggered a duty to defend, we stated:

> [The insurers] argue against an occurrence where, as here, a supplier simply breaches a contract and supplies defective goods. But this argument seeks to revive a wooden distinction recently rejected by the California Supreme Court between contractual claims and insurance claims. *See Vandenberg*, [982 P.2d at 245].... So long as the [insured] can show that the circuit boards failed unexpectedly and caused property damages, it is well on its way to a *prima facie* case even though a breach of contract may be involved.

*Id.* at 1056.

Unlike California however, Hawaii has not rejected the distinction between con-

tract and tort-based claims, and Oceanic fails to cite authority that would suggest otherwise. To the contrary, the Hawaii Supreme Court has stated that allowing tort recovery based on a breach of contract "unnecessarily blurs the distinction between—and undermines the discrete theories of recovery relevant to—tort and contract law." *Francis*, 971 P.2d at 708. We therefore conclude that changes in California law do not affect our application of Hawaii law.

Oceanic also argues that because the issue of whether a claim for a negligent breach of contract can constitute an occurrence is one of first impression in Hawaii, *Sentinel Ins. Co. v. First Ins. Co.*, 76 Hawai'i 277, 875 P.2d 894 (1994), applies to trigger coverage. In *Sentinel*, the insured, a corporation which had developed an apartment complex, faced claims of liability after water had infiltrated and damaged the property of unit owners. *Id.* at 901. The corporation had been insured under two policies issued by different insurers covering separate periods of time, and a dispute arose between the insurers as to when the property damage first occurred. *Id.* at 902–03. One insurer, First Insurance Company of Hawaii, refused to defend while the other, Sentinel Insurance Company, undertook defense of the underlying claim under a reservation of rights. After the parties in the underlying suit settled, Sentinel filed an action for declaratory relief, seeking to recover sums paid for defense and settlement from First Insurance on the theory that First Insurance had breached its duty to defend its insured. *Id.* at 903. The two insurance companies disputed when property damage occurred for purposes of coverage under a CGL policy—whether insurance coverage was triggered when damage actually manifested itself, or whether it was contin-

uously triggered while the property was exposed to the damage causing agent, even if the damage did not become apparent until later. Noting that there was "significant conflict among jurisdictions" and "[n]o reported Hawaii appellate court decision" as to which rule should apply, the court explained, "[t]he mere fact that the answers to those questions in this jurisdiction were not then and are not presently conclusively answered demonstrates that, based on the allegations in the underlying action, it was *possible* that the [insured] would be entitled to indemnification." *Id.* at 906–07 (emphasis in original). As a result, the court held that First Insurance had a duty to defend its insured, which it breached. *Id.* at 907.

Oceanic contends *Sentinel* stands for the proposition that where a case presents a legal uncertainty in Hawaii law, such that there is at least a possibility that the insurance company would have a duty to indemnify under the policy, that uncertainty itself triggers coverage under the policy and liability on the part of the insurer. Oceanic thus argues that because Hawaii has not rejected a negligent breach of contract theory, it was possible at the time the underlying suit was tendered that Oceanic would be insured for such a claim.

*Sentinel* is not so broad. The relevant portion of *Sentinel* concerned only the insurer's duty to defend. It was that duty which First Insurance was held to have breached in that case. The court clearly noted elsewhere in the *Sentinel* decision that "the duty to provide coverage and the duty to defend on the part of an insurer are separate and distinct." *Id.* at 908. Even a breach by an insurer of the duty to defend does not necessarily mean that the insurer is liable for indemnification. The court in *Sentinel* remanded that case for further proceedings to determine whether First Insurance was liable for indemnifica-

tion, based upon its breach of the duty to defend. *See id.* at 914.

■■■ The insurance company in the current case did not breach any duty to defend, even if it is assumed that there was such a duty. Unlike the insurer in *Sentinel*, Burlington provided a defense to the underlying lawsuit, under a reservation of rights. Then, while providing that defense, Burlington proceeded with this declaratory relief action to adjudicate its actual obligations under the CGL insurance policy. Nothing in *Sentinel* says that an insurance company is not permitted to provide a defense under a reservation of rights and simultaneously seek a declaration that under the given circumstances there is no coverage under the policy. A "declaratory judgment" is a "binding adjudication that establishes the rights and other legal relations of the parties" where those rights are in doubt. BLACK'S LAW DICTIONARY 846 (7th ed.1999). Actions for declaratory relief are authorized under federal law, *see* 28 U.S.C. § 2201, *et seq.* (the Declaratory Judgment Act); FED. R. CIV. P. 57, and under Hawaii law, *see* HAW REV. STAT. § 632–1. If the insurer obtains a declaratory judgment that there is no coverage, then there is no longer "legal uncertainty," and thus no basis to impose a continuing obligation on the insurer under *Sentinel*, even under Oceanic's reading of that decision.

There is, in addition, reason to doubt that the Hawaii Supreme Court intended that *any* degree of "legal uncertainty" or "legal ambiguity"—that is, any quantum of a possibility that the insured would be held entitled to coverage under Hawaii law—would itself establish coverage. Oceanic argues that because there was not a specific Hawaii Supreme Court case on point regarding issues raised here, there was legal uncertainty such that, under *Sentinel*, the district court should have held that

there was coverage on that basis alone. Noting the lack of any subsequent ruling by the Hawaii Supreme Court applying *Sentinel* in the manner suggested by Oceanic, the district court concluded that the Hawaii Supreme Court did not intend such a result. As the district court explained in *Masamitsu*:

A fundamental principle that should underlie any statement of Hawaii insurance law is that a plaintiff is the master of its claim. The underlying complaint against an insured defines the scope of the action, and, at least initially, of the insurer's investigation. A plaintiff for any number of plausible reasons may choose purposely not to assert certain facts or causes of action. The [insured's] interpretation of *Sentinel's* 'legal ambiguity' theory would mean that novel and remotely-possible claims (claims [not] addressed in Hawaii law) would trigger coverage over an otherwise non-covered action. An insurer would be defending against phantom claims. Given a constantly evolving common law, this Court in applying Hawaii law is unwilling to read as much into *Sentinel.*

*Masamitsu,* 74 F.Supp.2d at 991. We agree that *Sentinel* does not stand for the proposition that the absence of controlling Hawaii caselaw does not by itself establish sufficient legal uncertainty to trigger coverage. The observation by the court in *Sentinel* that it was "possible" that the insured would be entitled to indemnification under the insurance policy referred to more than a theoretical possibility. The court specifically pointed to "a notable dispute nationwide" and "significant conflict among jurisdictions" regarding the coverage question at issue there. *Sentinel,* 875 P.2d at 907. The level of uncertainty here is not the same.

Accordingly, we conclude that under Hawaii law, the homeowners' "other acts" allegation is not a covered occurrence under the policy.

## B. Negligent Infliction of Emotional Distress

 Oceanic argues that the policy potentially covers the homeowners' claim of negligent infliction of emotional distress. That claim reads in part:

### FOURTH CAUSE OF ACTION
*Emotional Distress*

[Homeowners] reallege paragraphs 1–21 above as though fully set forth herein.

22. At all times material to this Counterclaim, [Han] was acting as an agent on behalf of [homeowners] and had direct meetings with [Oceanic] and/ or entities as yet unnamed and/or unidentified whom [Oceanic] had a duty to supervise.

23. [Oceanic] through its principal, Jensen Wong, and/or through the conduct of … entities under the supervision of [Oceanic], intentionally or negligently inflicted emotional distress upon [Han].

24. As a direct and proximate result of the intentional or negligent infliction of emotional distress, [Han] has suffered bodily injury, pain and suffering, severe emotional distress. . . .

The district court concluded that the emotional distress claim did not trigger the duty to defend because it was a contract-based tort claim which arose only out of the contractual relationship between Oceanic and the homeowners.

Oceanic argues that the district court erred because homeowner Han's emotional distress could have been inflicted in the absence of a contractual relationship and should therefore trigger Burlington's duty to defend. Burlington concedes that in the absence of a contractual relationship, an

emotional distress claim would be covered under the policy. Burlington argues, however, that the counterclaim indicates that Han's emotional distress claim arose out of her meetings with a principal of Oceanic, and therefore, the claim could only have arisen as part of the contractual relationship. Burlington buttresses this argument by pointing to language used in the counterclaim where the homeowners reallege earlier paragraphs of their counterclaim, which according to Burlington, served to reallege the contractual setting. Incorporating preceding allegations into subsequent counts, however, is a common form of pleading and should not serve to transform tort claims into contract claims. The more difficult question, then, is whether the allegations present an independent tort claim for negligent infliction of emotional distress that would constitute an occurrence under the policy.

In Hawaii, as discussed above in Section II.A, damages for emotional distress in the employment context are recoverable under a contract only if the alleged conduct "(1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." *Francis*, 971 P.2d at 708. Oceanic argues that the language of the Fourth Cause of Action supports its contention that the emotional distress claim is independent of the contractual relationship. Oceanic specifically points to paragraph 22 of the counterclaim, where homeowner Han alleges that she had direct meetings with Oceanic or entities Oceanic had a "duty to supervise." Oceanic argues that because Han does not identify the source of the "duty to supervise" she asserts was imposed on Oceanic, the counterclaim raises a possibility of coverage. Oceanic further contends that this duty could not have arisen from Oceanic's status as a general contractor on the construction project, as the homeowners allege, because Oceanic denied responsibility for construction beyond that specifically set forth in the contract, and maintained that it was not the general contractor. In addition, Oceanic argues that a tort could conceivably arise out of a contractual relationship under different circumstances, e.g., if Oceanic's employees had accidentally injured one of the homeowners on the job, or, if Oceanic, in its anger over the homeowners' failure to pay, published an advertisement in the newspaper falsely accusing the homeowners of a crime.

Oceanic overlooks the undisputed facts of this case, however. Claims alleging the above situations may well constitute occurrences under a CGL policy, but no such facts were alleged here. According to Oceanic's complaint for breach of contract filed in Hawaii state court:

> 9. [Oceanic] and Defendant Han ultimately agreed on a modified scope of work and total contract price, thereby creating a binding agreement between Oceanic and Defendant Han, and agreed on a payment schedule as follows:
>
> 1st $45,000.00 Due on start-up; November, 1997
>
> 2nd 26,000.00 December 20, 1997, or upon completion of rough electrical & plumbing
>
> 3rd 40,000.00 January 30, 1998, or upon completion of roofing and window installation
>
> 4th 39,500.00 February 30, 1998, or upon completion of drywall and exterior
>
> 5th 39,000.00 March 30, 1998, or upon completion of painting, installation of fixtures
>
> 6th 30,000.00 30 days after completion of final inspection and all liens released

This language indicates that the agreement was for Oceanic to receive final payment after it had completed construction

of the *entire residence*. Although Oceanic continues to deny its status as a general contractor, in its answer to the homeowners' counterclaim, Oceanic admitted the homeowners' allegation that "[homeowners] contracted with[Oceanic] on or about December 1, 1998 for the construction *and supervision* of the Poola Street residence." The duty to supervise, therefore, was imposed under the contract and was not here an independent duty, as Oceanic suggests.[7]

We therefore agree with the district court that, under the given facts of this case, "but for the contractual relationship between Oceanic and the homeowners, the homeowners would not have a claim for negligent infliction of emotional distress." Accordingly, the homeowners' emotional distress claim cannot be read to constitute a covered occurrence under the policy at issue. *See Dairy Road Partners*, 992 P.2d at 112.

### C. Negligent Misrepresentation Claim

■ As a third basis for potential coverage, Oceanic contends that the homeowners have asserted a negligent misrepresentation and/or negligent recommendation claim included within the "other acts and omissions amounting to misfeasance, malfeasance and nonfeasance" allegation in paragraph 10(*l*) of the counterclaim. *See supra* Section II.A. As support for its argument, Oceanic cites a memorandum in opposition to summary judgment filed by the homeowners in the underlying case in Hawaii state court. According to the memorandum, the homeowners claim that Oceanic "recommended an unlicensed and unqualified mason to do the excavation and structural fill for the project," which, according to Oceanic, clarifies the "other acts" allegation to include a claim for negligent recommendation.

■ As Burlington correctly notes, however, the homeowners filed the memorandum more than three years after they filed the counterclaim, not in opposition to a motion brought by Oceanic, but in opposition to a motion for summary judgment filed by a third party defendant in the underlying lawsuit. In Hawaii, the duty to defend is determined at the time suit is brought or at the latest, when defense is tendered. *See Commerce & Indus. Ins. Co.*, 832 P.2d at 736; *Dairy Road Partners*, 992 P.2d at 108–09. Oceanic's claim that the "other acts" allegation includes a negligent recommendation claim therefore fails.

Even if we were to assume that the homeowners' counterclaim asserts a claim for negligent recommendation, that claim rests on Oceanic's breach of its contractual duty to construct and supervise the homeowners' residence, a duty Oceanic itself has acknowledged. *See supra* Section

---

7. Even if we were to assume that the "duty to supervise" is "independently recognized by principles of tort law," Hawaii law allows recovery of damages for emotional distress arising out of a breach of contract in only two exceptional situations. *Francis*, 971 P.2d at 713. "In the first situation, the emotional distress will usually accompany a bodily injury," e.g., a claim for medical malpractice. *Id.* The second situation exists "where the contract is of such a kind that serious emotional disturbance is a particularly foreseeable result of a breach," e.g., breach of a promise to marry; breach of a contract where a mortician agrees to prepare a body for burial in a certain manner. *Id.* Here, Han alleges that she suffered bodily injury as "a direct and proximate result of" Oceanic's infliction of emotional distress—not that she suffered emotional distress due to bodily injury inflicted by Oceanic, as in a medical malpractice claim. Likewise, the construction contract at issue does not fall into the category of cases where emotional distress is the foreseeable result of a breach of that contract.

II.B. Accordingly, the homeowners' claim is not a covered occurrence under the policy.

## III. CONCLUSION

For the foregoing reasons, we conclude that because the homeowners' counterclaim does not allege causes of action that would constitute occurrences under the CGL policy at issue, they are not within the scope of coverage. Accordingly, we affirm the district court's grant of Burlington's motion for summary judgment and denial of Oceanic's motion for summary judgment.

**AFFIRMED.**